UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERGUN BOZDOGAN,

                          Plaintiff,

                 -against-

23 LUDLAM FUEL, INC., JOHN PARISI, and
ANTON PARISI,

                          Defendants.
-------------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

16-CV-1053 (JMW)

**A P P E A R A N C E S:**

Keith E. Williams, Esq.
Justin M. Reilly, Esq.
**Neil H. Greenberg & Associates, P.C.**
4242 Merrick Rd
Massapequa, NY 11758
*Attorney for Plaintiff*

Jeffrey H. Weinberger, Esq.
**Law Office of Steven Cohn, P.C.**
1 Old County Rd, St 420
Carle Place, NY 11514
*Attorney for Defendants*

**WICKS,** Magistrate Judge:

        Working as an attendant in a gas station has its challenges.[1]  Overtime is not unusual for

attendants.[2]  This case is about an employee of a gas station in Bayville, New York, who claims

he was not paid overtime due to him for the many hours he claims to have logged in.  The

questions tried before the Court were (i) whether the employee established that the gas station

---

[1] As Sam Neumann recounts in *Memoirs of a Gas Station: A Delightfully Awkward Journey Across the Alaskan Tundra* (2012) (*NY Times* Bestselling List).

[2] It has been reported that on average, full-time employees of gas stations work approximately 43.2 hours per week. *See Gasoline Stations*, Data USA, https://datausa.io/profile/naics/gasoline-stations.

willfully violated the overtime provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and (ii) whether Defendants failed to provide Plaintiff with wage notices and statements during his employment in violation of New York Labor Law.  If so proven, then the Court must determine whether overtime compensation, liquidated damages, statutory penalties, interest, and attorneys' fees should be awarded.  Upon careful review of the evidence adduced at trial, the parties' proposed findings of fact and conclusions of law, and the controlling law on the issues presented, Court finds in favor of Plaintiff and awards Judgment against Defendants, jointly and severally, for unpaid wages, liquidated damages, statutory damages and attorneys' fees.

This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).

## I.  PROCEDURAL SETTING

Plaintiff Ergun Bozdogan commenced this action against Defendants 23 Ludlam Fuel, Inc. ("Ludlam"), John Parisi, and Anton Parisi alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq*., and New York Codes, Rules, and Regulations ("NYCRR") Part 142-2.2, for failure to pay overtime compensation and spread of hours wages.  (DE 1.)  The Honorable A. Kathleen Tomlinson presided over a bench trial[3] of this matter on January 23 and 24, 2019.[4] (DE 60; DE 61.)  Thomas Falzone, Jacalyn Parisi, John Parisi, and Plaintiff Ergun Bozdogan

---

[3] The parties consented to a bench trial of this matter. *See* Joint Pretrial Order (DE 38).

[4] Pursuant to 28 U.S.C. § 636(c), the parties filed a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge on October 1, 2018.  (DE 49.)

testified during Plaintiff's case-in-chief; Defendants' case-in chief consisted of testimony from Plaintiff, Ismial Boncukcu, and Fatin Kayis; Plaintiff submitted Exhibits 1-12 into evidence; and, Defendants submitted Exhibit A into evidence.  (DE 62; DE 63.)  Following the completion of the bench trial, Plaintiff and Defendants submitted proposed findings of fact and conclusions of law (DE 63 and DE 64 respectively).  On May 2, 2019 and May 8, 2019, Plaintiff's fully briefed motion to amend his pleadings to assert two additional claims for wage notice and statement violations under NYLL §§ 195(1)(a) and 195(3) was submitted.  (DE 66-DE 68.)

On October 25, 2021, this matter was reassigned to the undersigned [5] while decisions on the bench trial and motion to conform the pleadings remained *sub judice*.  (Electronic Order dated Oct. 25, 2021.)  On December 2, 2021, the undersigned held a conference to confer with the parties whether they intended to recall any material witness pursuant to Rule 63.  (DE 70.) On January 19, 2022, Defense counsel re-called Defendant John Parisi.  (DE 75.)  At the completion of Mr. Parisi's testimony, trial concluded and the evidentiary record was closed. (*Id.*)  Defendants and Plaintiff submitted supplemental proposed findings of fact and conclusions of law.  (DE 77-DE 78, respectively.)  On February 22, 2022, the Court granted Plaintiff's motion to amend the pleadings, pursuant to Fed. R. Civ. P. 15(b), to conform to the evidence adduced at trial.  (DE 79.)

## I.     THE BURDEN OF PROOF

Long ago the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), *superseded on other grounds by statute*, Portal-to-Portal Act, Pub. L. No, 80-49, 61 Stat. 84 *et seq.*), held that where an employer maintains inadequate records, a plaintiff must make only a minimal showing of underpayment, and the burden then shifts to defendants to

---

[5] The case was reassigned to the undersigned upon the passing of Judge Tomlinson.

disprove plaintiff's assertions.  *See Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812

(ARR)(VMS), 2013 WL 12363005, at *6 (E.D.N.Y. Feb. 12, 2013) (citing *Anderson*, 328 U.S. at

687).  A plaintiff can meet that initial burden "by relying on recollection alone . . .[t]he burden

then shifts to the employer to come forward with evidence of the precise amount of work

performed or with evidence to negative the reasonableness of the inference to be drawn from the

employee's evidence."  *Id.* (internal citations omitted).  "Under New York law, the employer can

meet this burden only by showing by a preponderance of the evidence that the employee was

properly compensated."  *Id.*

Accordingly, Plaintiff bears the burden of proving by a preponderance of evidence that

Defendants did not adequately compensate him for the work he performed and "to show the

amount and extent of that work as a matter of just and reasonable inference."  *Solis v. SCA Rest.*

*Corp.*, 938 F. Supp. 2d 380, 392 (E.D.N.Y. 2013) (citing *Reich v. S. New England Telecomm.*

*Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (internal quotation marks and citation omitted).  If Plaintiff

meets this burden, "the burden shifts to the employer . . . to produce evidence of the precise

amount of work performed" or evidence to negate the reasonableness of the inference derived

based on Plaintiff's evidence.  *Reich*, 121 F.3d at 67 (internal quotation marks and citation

omitted).  Plaintiff also bears the burden of proving by a preponderance of evidence that the

defendants violated recordkeeping provisions, as well as the amount of damages to which

plaintiff is entitled.  *Solis*, 938 F. Supp. 2d at 392.  If Defendant "fails to produce [evidence of

the precise amount worked or to negate the reasonableness of the employee's evidence], the

court may then award damages to the employee, even though the result be only approximate."

*Anderson,* 328 U.S. at 687-88; *see also Rivera v. Ndola Pharmacy Corp.,*497 F. Supp. 381, 389

(E.D.N.Y. 2007) (damages may be awarded based upon plaintiff's estimates even though exactness and precision of measurement may be lacking if employer's records are inadequate).

## II.   **FINDINGS OF FACT**

Defendants John Parisi and Anton Parisi own 23 Ludlam Fuel, Inc., the only retail gas station in Bayville, New York (Tr. at 10, 2-20) [6], and Plaintiff was employed by Ludlam as a full-time gasoline attendant with his employment beginning on August 26, 2011.  (Tr. at 11:8-23; 244:25-245:21.)  He resigned on June 18, 2015.  (Tr. at 246:12-14.)  Each party is considered below.[7]

***The Defendants.***

Ludlam was formed in early 2011 and has operated since then as a motor fuel gas station located at 23 Ludlam Avenue, Bayville, New York.  (Tr. 172:22-173:17.)  Defendant John Parisi purchased the gas station in early 2011 and is the President of Ludlam.  (Tr. 10:10-14; 69:3-4; 172:15-21.)  Anton Parisi is an officer of Ludlam.  (Tr. 173:18-20.)  As President of Ludlam, John Parisi essentially did "everything" and all decisions were run by him.  (Tr. 173:21-176:11.)  He addressed employee issues, had authority to hire and fire, wrote payroll checks, decided how much to pay employees, decided whether to pay an employee in cash or by check, decided when to give employees raises, and decided hours of work.  (Tr. 15:13-20; 174:2-14; 176:18 - 179:4; 216:21-217:11.)  John Parisi also had check-signing authority and was the signatory to Ludlam's

---

[6] The trial transcript for the bench trial held on January 23 and 24, 2019 is attached as Exhibit 14 to Plaintiff's proposed findings of fact and conclusions of law (DE 63) and is referred to herein as "Tr."  The trial transcript for the third day, that is, the recalling of John Parisi on January 19, 2022, is attached as Exhibit 1 to Plaintiff's supplemental proposed findings of fact and conclusions of law (DE 78) and referred to herein as "Supp. Tr."

[7] Anton Parisi did not testify at trial or the supplemental hearing.

annual tax returns.  (Tr. 153:1-4; 185:16-187:7.)  He was Plaintiff's boss, hired Plaintiff as a full-time gas station attendant, decided Plaintiff's hourly rate of pay, and approved Plaintiff's pay raise.  (Tr. 14-15; 175.)

Jacalyn Parisi, John Parisi's daughter, was the bookkeeper at 23 Ludlam throughout Plaintiff's employment.  (Tr. 24:15-5.)   Thomas Falzone was a gas attendant and also took care of the books on a daily basis.  (Tr. 12:5-14:6.)  John Parisi would come to the gas station about twice a week.  (Tr. 14:16-20.)  Falzone was Plaintiff's primary supervisor when Parisi was not present.  (Tr. 14:14-15; 30:3-6.)  John Parisi was also Falzone's boss/supervisor, and also decided all employees' pay rates and raises.  (Tr. 14:21-15:4, 13-25; 16:1.)

### *The Plaintiff.*

Plaintiff began working at Ludlam on August 26, 2011 and resigned on June 18, 2015. (Tr. 244:25 - 245:2; 246:12-14.)   He worked at Ludlam as follows: from August 26, 2011 until February 2012, he alternated working seventy-eight hours per week and ninety-one hours per week, every other week; from February 2012 until August 30, 2012 he worked seventy-eight hours per week; he did not work form August 31, 2012 until November 15, 2012; from November 16, 2012 until mid-January 2013 he worked forty-eight hours per week; and, from mid-January 2013 until April 18, 2013 he did not work more than forty hours per week.  Plaintiff further claimed he did not receive uninterrupted meal breaks during his employment because he was the only employee present, and aside from two vacations – March 1-March 30, 2014 and March 5-April 12, 2015 – he did not miss any other weeks during his employment.  (Tr. 250:24-251:17; 254:7-259:5.)  Plaintiff claims that from August 2011 through October 29, 2012 (when Hurricane Sandy hit), the gas station operated 7 days per week with the exception of 3 days from

August 27 – August 29, 2011 after Hurricane Irene; from mid-January 2013 through April 18, 2013 the gas station underwent renovations; and, from April 19, 2013 through at least June 18, 2015, the gas station was open 7 days per week.  (Tr. 135:14-22; 136:7-9: 155:25-156:20; 183:14-194:12; 255:19-256:12; 257:13-258:6.)  During Plaintiff's shifts, Plaintiff would be the only one working.  (Tr. 12:1-2.)

According to Defendants, all of their records prior to November 2012 were destroyed during Hurricane Sandy.  (Tr. At 183:10- 13, 208:25-209:11.)   There are no records for the period from November 2012 through April 2013.  Plaintiff worked Fridays through Thursdays, and he filled out shift sheets each day, for the time period from April 19, 2013 through June 18, 2015, as Defendants did not have an operational time clock to track employees' hours.[8]  (Tr. 18:5-7; 20:8-10; 21-25-19:16; 21:10-21; 249:20-25; 252:8-13; 259:3-8; *see also* Exs. 6-12 (DE 63-8 – 63-14).)  Defendants admitted to the accuracy of the time sheets, having no reason to doubt them (Tr. 265-67; Ex.1.) Plaintiff submitted his handwritten shift sheets (including days worked, hours worked, hourly rate of pay, and amount he was paid) to Thomas Falzone, the station manager and Plaintiff's direct supervisor, each Thursday.  (Tr. 19:20-23:7; 138:15-16; 259:3-12.)  Falzone would then pay Plaintiff in cash on Fridays, based on Plaintiff's submitted time sheet.  (Tr. 22:13-22;  32:3-23.)   Falzone always paid Plaintiff straight time, without any overtime, except for six holidays per year, even though Defendants knew Plaintiff was entitled to overtime.  (Tr. 49:19-25; 50:1-8; 58:1-18; 60:10-12; 64:7-10; 165:24-167:1; 250:7-23; 259: 13-16; 260:7-12; 262: 6-9; 283:4-10.)  No documentary evidence was adduced indicating Plaintiff was paid overtime with the exception of certain holidays per year. (Tr. 64:7-10; 232:11-233:22.)

---

[8] The Parisi's did install a time clock, but the clock malfunctioned repeatedly and did not accurately record employees' hours, so Plaintiff and other gas attendants filled out shift sheets.  (Tr. 18: 5-7; 21-25; 19:1-16.)

Plaintiff was never provided with wage statements or wage notices at any time.  (Tr. 6:20-22; 23:5-7, 33:6- 9, 13-16; 34:1-6, 165:9-23, 167:5-12; 179:5-180:4; 182:21-25, 187:8- 15, 190:13-19, 193:1-12; 246:23-247:15; 259:17-19, 262:3-5, 264:2-4.)  Plaintiff claims that he asked Falzone to pay him overtime compensation, but Falzone told him that gas stations do not pay overtime.  (Tr. 274:13-276:2.)

Defendants claim that Plaintiff never complained about not receiving overtime or that he was deprived of any compensation for the periods 2012 through 2015.  (Tr. 221:25-223:9.) Defendants contend that until April 2013, the gas station did not have sufficient lighting to permit operations beyond 7:00 p.m., and thus, Plaintiff's regular hours were 7:00 a.m. to 7:00 p.m. (Tr. 67:1-68:10), and that the station was never open past 11:00 p.m. and therefore, Plaintiff's shift sheets indicating he worked past 11:00 p.m. were false.  (Tr. 72:8-9; 74:1-104:19.) When the station was allegedly closed for renovations between November 2012 and March 2013, Defendants claim that they gave Plaintiff work outside of his normal scope as a gas attendant so that he could still have some income.  (Tr. 220:7-13.)

Defendants paid Plaintiff $10.00 per hour from August 26, 2011 until May 15, 2014, and $10.50 per hour from May 15, 2014 until June 18, 2015, when he resigned.  (Tr. at 27:7-11; 47:4-21; 154:23-155:3; 245:22-23; *see also* Ex. 1 at LF0087 (63-3).)  According to Plaintiff, from August 26, 2011 until August 1, 2013, Defendants paid Plaintiff in cash, and on August 1, 2013[9], John Parisi began giving Plaintiff a $400.00 check each week.  (Tr. 261:20-262:2.) According to Defendants, Plaintiff was paid in cash from August 26, 2011 until December 27, 2013.  (Tr. 152:11-17; 183:6-9; 191:16-24; 235:22-236:3; 242:11-16; Supp. Tr. 42:4-8; 43:1-8.)

---

[9] At the continued bench trial on January 19, 2022, Plaintiff's counsel clarified during cross-examination of Parisi that the first check paid to Plaintiff was December 27, 2013, rather than in August of 2013. (Supp Tr. 42:1-43:8.)

According to Defendants, from December 2013 through the end of his employment, Plaintiff was paid pursuant to an agreement with John Parisi which they entered into at Plaintiff's request. (Tr. 192:6-16; 205:5-206-9.)  Under this purported agreement, Plaintiff was paid one and one half times base pay for every hour he worked over forty hours in a week.  (Tr. 187:12-188:6; 192: 11-16.)  Such payment consisted of a $400.00 check representing "net pay" from $500, which included twenty hours of overtime, and any hours above sixty would be paid to Plaintiff in cash.  (Supp. Tr. 7:20; 9:2-11, 22-23.)  John Parisi claims that each week in addition to the $400.00, he paid $100.00 in taxes for Plaintiff which represented the twenty hours of overtime. (Tr. 193 15-23; Supp. Tr. 9:14-23.)  Plaintiff asserts that there is no evidence showing what taxes, if any, were withheld from Plaintiff's pay on a weekly basis and that Plaintiff's W-2 forms conflict with John Parisi's testimony.  (DE 78 at 3-4 (citing Supp. Tr. 48-53).)

Plaintiff reported his hours to Falzone each week on a sheet of paper, and Falzone paid Plaintiff each week.  (Tr. 19:17-20:1-16.)  Falzone would multiply Plaintiff's hours by his hourly rate and pay him in cash.  (Tr. 25:6-10.)  Significantly, Plaintiff did not receive pay stubs.  (Tr. 23:5-7.)  Falzone would write the dollar amount that he was paying out employees on a shift sheet.  (Tr. 56: 20-57:3.)  The hours that Plaintiff reported each week always seemed accurate to Falzone and he was confident that Plaintiff actually worked the hours that he recorded on the sheets.  (Tr. 25:24-26:6; 45:10-46:1, 17-25; 47:3; 62:11-23.)  Falzone's perception of Plaintiff was that he was an honest and good employee.  (Tr 62:24-63:1.)  Falzone conceded that he knew that Plaintiff worked more than 40 hours per week for most of his employment and was entitled to be paid time and a half for each hour over 40, but that he never paid Plaintiff overtime aside from six holidays (Christmas, New Years, Thanksgiving, Labor Day, Memorial Day, and the 4th

of July).  (Tr. 27:7-25; 28: 7-12; 29:1-4; 58:1-18; 61:8-11; 62:1-10.)  From August 26, 2011 to

May of 2014, Plaintiff was paid $10.00 per hour.  (Tr. 27:7-11.)

　　　Without explanation, Defendants have none of Plaintiff's handwritten records for the

period of November 2012 through April 18, 2013.  From April 19, 2013 through June 18, 2015

(the end of Plaintiff's employment), the weekly time sheets Plaintiff submitted indicate that

Plaintiff worked over forty hours nearly every week during this period and was only paid

straight-time for his work; Defendants stipulated to the accuracy of these records.  (Tr. 265-67;

Ex.1.)


***Plaintiff's Schedule.***

　　　The evidence shows that from August 26, 2011 through February 2012, Plaintiff's hours

were as follows:

　　　　　M-F………10:00 am - 11:00 pm.

　　　　　Sa…………11:00 am - 12:00 am.

　　　　　Su………….7:00 am – 8:00 pm (every other).

(Tr. 248:9-249:3, 250:24-251:17.)

From February 2012 until August 30, 2012, Plaintiff's hours were as follows:

　　　　　M-F ………10:00 am – 11:00 pm.

　　　　　Sat…………11:00 am – 12:00 am.

(Tr. 251:18-252:1.)

He did not work from August 31, 2012 until November 15, 2012. (Tr. 256:13-18.)  From

November 16, 2012 until mid-January 2013, Plaintiff worked six days a week from 6:00 am -

2:00 pm.  (Tr. 256:19-257:10.)  From mid-January 2013 through April 18, 2013, he did not work

more than forty hours per week.  (Tr. 257:19-25.)  Thereafter from April 19, 2013 through June

18, 2015, Plaintiff's daily and weekly hours are set forth on his time sheets and confirm he worked in excess of forty hours per week. (DE 63-3 (Exhibit 1).)

As the only employee during many of his shifts, he also did not receive uninterrupted meal breaks.  (Tr. 14:7-13, 250:24-251:17.)  He also took limited vacations (*see* Ex. 1 (DE 63-3) at LF0078, LF00138, LF00142; Tr. at 258:10-259:2), and even Falzone testified Plaintiff worked more than forty hours per week most weeks.  (Tr. 58:1-3.)

***Plaintiff's Hours and Wages.***

So, the question remains, what were his wages for these hours worked?  They varied over time, summarized as follows:  From August 26, 2011 – May 15, 2014, Plaintiff was paid $10.00 per hour (paid in cash until August 1, 2013).  (Tr. at 27:7-11; 47:8-21; 152:11- 17; 154:23-155:3; 183:6-9; 191:16-24; 235:25-236:3; 245:22-23; 261:20-262:2); *see also* Ex. 1 at LF0087 (DE63-3).  As of December 27, 2013, Plaintiff was paid $400 by check each week, in addition to cash payments. (Tr. 242:11-16, 261:20-262:2, 16-17; Supp Tr. 42:1-43:8.)  With the exception of certain holidays,[10] Falzone always paid Plaintiff straight-time for the hours worked and never paid overtime compensation at a rate of one and one-half times his regular hourly rate of pay, aside from the holidays. (Tr. 27:7-25; 28: 7-12; 29:1-4; 49: 19-25; 50:1-8; 58:1-18; 60:10-12; 61:8-11; 62:1-10; 64:7-10; 165:24-167:1; 250:7-23; 259: 13-16; 260:7-12; 262: 6-9; 283:4-10.)

Proper wage statements and notices were admittedly not provided under NYLL § 195; nor was Plaintiff provided wage statements each week (Tr. 6:20-22; 23:5-7, 34:5-6, 165:9-23, 182:21-25, 187:8- 15, 190:13-19, 193:1-12, 259:17-19, 262:3-5, 264:2-4), or a wage notice (Notice of Acknowledgment of Pay Rate and Pay Date Form) at time of hiring, paystub or any

---

[10] Defendants paid Plaintiff overtime only for those hours he worked on Christmas, New Years Day, Thanksgiving, Labor Day, Memorial Day, and the 4th of July.

written document as to what his hourly rate was.  (Tr. at 33:6- 9, 13-16, 34:1-6, 167:5-12, 179:5-180:4, 246:23-247:15).  Falzone never handed Plaintiff checks or kept any record of checks given to Plaintiff.  (Tr. 34:17-21.)  Ignorance of the requirements of N.Y. Labor Law § 195 was freely admitted by Falzone and Parisi. (Tr. 64:7-24; 167:2-15.)

Plaintiff seeks the following damages (DE 78-2):

> 2011 Overtime Compensation: $3,815.
> 2012 Overtime Compensation: $7,020.
> 2013 Overtime Compensation: $4,140.
> 2014 Overtime Compensation: $5,527.27.
> 2015 Overtime Compensation: $2,594.84.
> NYLL § 195(1) Wage Notice Statutory Penalties: $5,000.
> NYLL § 195(3) Wage Statement Statutory Penalties: $5,000
> CPLR Interest Pursuant to NY Law as of February 4, 2022: $17,763.26
> NYLL Liquidated Damages: $23,097.11

**TOTAL**: $73,957.48, plus reasonable Attorneys' Fees, Costs and Disbursements

## III.   <u>CONCLUSIONS OF LAW</u>

As a threshold matter, this Court has federal question subject matter jurisdiction, *see* 28 U.S.C. § 1331, since the action arises under Section 17 of the FLSA.  29 U.S.C. § 217.

### A.  Statute of Limitations

Under the FLSA, a Plaintiff may recover wages within two years after a claim accrues, or within three years if the plaintiff can demonstrate that a defendant's violation of the Act was willful.  29 U.S.C. § 255(a).  "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  In this Circuit, the question of willfulness is generally left to the trier of fact.  *Solis*, 938 F. Supp. 2d at 393 (collecting cases).  The employee bears the burden of establishing willfulness.  *Id.*

12

Under the NYLL, the statute of limitations to recover unpaid wages is six years. N.Y. Lab. Law § 198(3); *Id.* § 663(3). Accordingly, a plaintiff "may recover under the NYLL for claims arising outside of the FLSA's three-year limitations period." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) *adopting report and recommendation*.

In this case, Plaintiff filed the Complaint on March 2, 2016. (DE 1.) Accordingly, Plaintiff's FLSA claims begin on March 2, 2013, and the statute of limitations as to Plaintiff's NYLL claims covers the entirety of Plaintiff's employment with Defendants (beginning on August 26, 2011). The Court finds that Falzone knew that Plaintiff was entitled to overtime compensation and that he was not paying him for the overtime on hours in excess of 40 hours per week. This awareness gives rise to an inference of willfulness that supports a finding that the three-year statute of limitations applies to the FLSA claims. As to the NYLL claims, the applicable period is the entirety of Plaintiff's employment, namely, August 26, 2011 through June 18, 2015.

### B. Threshold Issues and Joint and Several Liability Under the FLSA and the NYLL

To prove an FLSA claim, a plaintiff must establish that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014) *adopting report and recommendation*. Here, there is no dispute that Ludlam is an enterprise as the parties have stipulated that Ludlam is an FLSA enterprise within the meaning of 29 U.S.C. § 203(s), and meets the $500,000 threshold for each relevant year. (Tr. 4:18-20; DE 25.)

13

The FLSA defines an "employee" as "any individual employed by an employer" and defines "employ" as "to suffer or permit to work."  29 U.S.C. §§ 203(e)(1), (g), *declared unconstitutional by Hootselle v. Mo. Dep't of Corr.*, 624 S.W. 3d 123 (Mo. 2021).  The FLSA defines an "employer" to be "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d).  The "economic reality" test sets forth the relevant factors courts analyze to determine if an alleged employer had the power to control the subject worker – whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted).  No factor is dispositive and "any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."  *Id.* (citation omitted).  Employer status does not require continuous monitoring or total control of an employee.  *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 315 (E.D.N.Y. 2009).  "[A]n employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees."  *Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017) (internal quotation marks and citation omitted).

"The NYLL is the state analogue to the federal FLSA."  *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *4 (E.D.N.Y. Mar. 31, 2015) *adopting report and recommendation* (noting that the although the NYLL does not require a plaintiff to show a nexus with interstate commerce or an employer's minimum amount of sales, the NYLL "otherwise mirrors the FLSA in most aspects, including its minimum wage and

14

overtime compensation provisions."). The NYLL's definition of "employer" is coextensive with the FLSA's definition of employer. *Fermin,* 93 F. Supp. 3d at 37.

Here, none of the exemptions as defined by the FLSA (29 U.S.C §§ 203(e)(2)-(5))[11] are applicable to Plaintiff. The Court finds, and Defendants did not dispute, that Plaintiff was an employee of Defendants within the meaning of the FLSA.

As set forth above, the evidence adduced at trial unequivocally established that John Parisi was owner and President of 23 Ludlam with operational control over the business. He maintained responsibility over all aspects of the facility: hiring, firing, compensation, hours, raises, work schedules. This exercise of dominion and control over Plaintiff makes him squarely an "employer" under both the FLSA and NYLL. Because Defendants John Parisi and Ludlam[12] are found to jointly be Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL if damages are awarded in favor of Plaintiff. *Fermin*, 93 F. Supp. 3d at 37; *see also Khurana*, 2017 WL 1251102, at *9 (finding individual and corporate defendants jointly and severally liable for violations of overtime and spread of hours provision of the FLSA and NYLL after individual defendant conceded he was an owner, officer, and manager of gas station and exercised control over plaintiff's terms and conditions of employment); *Gayle v. Harry's Nurses Registry, Inc.*, 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) ("The

---

[11] Plaintiff is non-exempt because he was not employed by a "public agency," employed by "an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediate family," did not "volunteer[] to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency," and did not "volunteer [his] services solely for humanitarian purposes to private non-profit food banks." *See* 29 U.S.C. § 203(e)(2)-(5).

[12] The Court does not find that Anton Parisi has employer status. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status.").

overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liability [sic] under the FLSA for unpaid wages.") (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (citing cases).

### C.  Overtime Violations under the FLSA and NYLL

Under the FLSA and NYLL, employers are required to pay employees at least one-and-a-half times the regular rate at which they are employed for any workweek longer than forty hours. *See Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. Mar. 12, 2010) (citing 29 U.S.C. § 207(a)(1); N.Y. Lab. Law §§ 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also* 29 C.F.R. § 778.112.  An employer that violates section 206 or section 207 of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  *Solis*, 938 F. Supp. 2d at 394 (citing 29 U.S.C. 216(b), *declared unconstitutional by Hootselle v. Mo. Dep't of Corr.*, 624 S.W. 3d 123 (Mo. 2021)).  To recover unpaid overtime wages under the FLSA, a plaintiff must show that he was eligible for overtime (*i.e.*, not exempt) and that he indeed worked overtime hours without compensation.  *Id.* at 394.  While a plaintiff typically has the burden of establishing that he was not adequately compensated for work he performed, that burden is met if the employer does not have accurate or adequate records, if plaintiff shows that he has in fact performed the work, and if plaintiff "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.* (quoting *Anderson*, 328 U.S. at 687 (1946)).  Plaintiff may satisfy his burden though estimates based on his own recollection.  *Keubel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit

16

. . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection.") (citing cases).

Here, because the Court has found that defendants did not maintain records of the number of hours Plaintiff worked and his rate of pay for the period of August 26, 2011 through June 18, 2015, Plaintiff only needs to submit sufficient evidence that he was not compensated as required under the FLSA and NYLL, and sufficient evidence showing the amount and extent of his work as a matter of just and reasonable inference. The Court finds that Plaintiff has met that burden and accordingly, the Court relies on and credits Plaintiff's testimonial recollection of hours worked.

Although Defendants assert that Plaintiff never complained about not receiving overtime, "the law is clear that an employee may not waive the right to overtime under the FLSA; such a concept would nullify the purposes of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Bedasie v. Mr. Z Towing, Inc.*, 13 CV 5453 (CLP), 2017 WL 1135727, at *21 n.33 (E.D.N.Y. Mar. 24, 2017) (alteration in original) (internal quotation marks and citations omitted). *see also Debejian v. Atl. Testing Labs., Ltd.*, 64 F. Supp. 2d 85, 92 (N.D.N.Y. 1999) ("It is irrelevant that plaintiff never complained about not being compensated for overtime.").[13]

The alleged loss of records due to Hurricane Sandy does not provide a safe harbor for Defendants. Even though that may explain some time period for missing records, there remain unexplained missing records for other time periods. In all, the testimony at trial reveals an

---

[13] The Court further notes that Plaintiff indeed testified that he asked Falzone for overtime compensation and Falzone told him gas stations do not pay overtime. (Tr. 274:13-276:2.)

inadequate and at times non-existent record-keeping practice sufficient to satisfy both the FLSA

and NYLL.

| Year | Regular Rate | OT Rate | OT Hours Per Week[14] | Weeks Worked with OT | Total Owed |
|------|--------------|---------|------------------------|----------------------|------------|
| 2011 | 10.00 | 15.00 | 38.00-51.00 | 17 | 3,815.00 |
| 2012 | 10.00 | 15.00 | 8.00-51.00 | 41 | 7,020.00 |
| 2013 | 10.00 | 15.00 | 8.00-35.00 | 37 | 4,140.00 |
| 2014 (*through May 15, 2014*) | 10.00 | 15.00 | 11.00-27.00 | 15 | ------------ |
| 2014 (*after May 15, 2014*) | 10.50 | 15.75 | 13.50-36.50 | 31 | 5,527.27 |
| 2015 | 10.50 | 15.75 | 8.00-47.00 | 19 | 2,594.84 |
| **TOTAL** | | | | | 23,097.11 |

### D. Statutory Damages for Failure to Provide Plaintiff with Wage Notices and Wage Statements

Under federal and New York law, employers must make, keep, and preserve records of

employee wages, hours, and employment conditions and practices.  29 U.S.C. § 211(c); 12

NYCRR § 142-2.6.  Specifically, pursuant to the Wage Theft Prevention Act, "New York law

requires that employees be furnished with written notice with rate or rates of pay and basis for

payment, allowances, if any, the regular pay day, employer's name and contact information."

*Herrera*, 2015 WL 1529653, at *4 (citing N.Y. Lab. Law §§ 195(1)(a) and (3)).  As noted above,

---

[14] Within each year period, Plaintiff's overtime hours fluctuated and the number of weeks that Plaintiff worked overtime also fluctuated.  The weekly break-downs are more specifically set forth in DE 78-2, Plaintiff's calculation of damages, which is taken from the undisputed records of Plaintiff's handwritten time sheets and Defendants' calendars (Exhibit 1 (DE 63-3)).

Defendants do not dispute that they failed to provide written notice of wage information as required under the NYLL and are thus liable for statutory damages to Plaintiff.

Section 195(1) of the NYLL, which became effective on April 9, 2011, holds that employers who violate the provision by not providing wage notices are liable for fifty dollars in damages for each week that the violation occurs, up to a statutory maximum of $2,500. *Id.* (citing N.Y. Lab. Law § 198(1-b)). Starting February 27, 2015, these statutory damages were increased to $50.00 per day, up to a maximum of $5,000. *Wing Chan v. Xifu Food, Inc.*, No. 18-CV-5445 (ARR)(RML), 2020 WL 5027861, at *9 (E.D.N.Y. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020) (citing N.Y. Lab. Law § 198(1-b)). Section 195(3) also became effective on April 9, 2011, and held that employers who violate that provision are liable for one hundred dollars in damages for each week that the violation occurs, with the same statutory maximum of $2,500. *Id.* (citing N.Y. Lab. Law § 198(1-d)). Section 198(1-d) was also further amended to hold that on and after February 27, 2015, an employer in violation of § 195(3) is liable to plaintiff for two hundred fifty dollars for each work day that the violation occurred, not to exceed $5,000. *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, No. 15-CV-2158 (RA)(AJP), 2015 WL 5710320, at *7 (S.D.N.Y. Sep. 25, 2015) (citing N.Y. Lab Law § 198(1-d)).

The evidence at trial established that Defendants simply did not provide (as required) any wage notices or wage statements at any time during Plaintiff's employment, a fact conceded at trial that Defendants are "not running" from.  (Tr. At 6:20 -23.)  Accordingly, Plaintiff is entitled to the maximum statutory damages of $5,000 pursuant to Defendants' violations of § 195(1)[15]

---

[15] $50.00 x 168 weeks worked prior to February 27, 2015 = $8,400; $50.00 x 60 days worked after February 27, 2015 = $3,000.  $8,400 + $3,000 = $11,400, which is statutorily capped at $5,000.

and the maximum statutory damages of $5,000 pursuant to Defendants' violations of § 195(3).[16]

*See Ying Ying Dai v. ABNS NY INC.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020) (finding that Plaintiffs who did not receive wage statements throughout their entire employment (2004-2018 and 2010-2019) were entitled to the maximum statutory damages of $5,000 pursuant to § 195(3)); *Wing Chan*, 2020 WL 5027861, at *9 (E.D.N.Y. Aug. 25, 2020), (finding that Plaintiffs who worked more than 100 days after February 26, 2015 without any wage notice and without any wage statements were entitled to the statutory maximum of $5,000 pursuant to § 195(1), and the statutory maximum of $5,000 pursuant to § 195(3)).

### E.  Liquidated Damages and Prejudgment Interest

A plaintiff may recover liquidated damages under the FLSA "'in the amount of their unpaid . . . wages' . . . absent a showing that the employer acted in good faith." *Khurana*, 2017 WL 1251102, at * 16 (quoting 29 U.S.C. §216(b); citing *Id.* § 260).  "[T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." *Solis*, 938 F. Supp. 2d at 403 (brackets in original) (citation omitted).  As of April 9, 2011[17], a plaintiff may also recover liquidated damages under the NYLL amounting to 100% of the total unpaid wages unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 663(1); *see also Khurana*, 2017 WL 1251102 at *16.  While there was a period of time that Courts in this Circuit split on whether a plaintiff is entitled to liquidated damages for identical violations under both the FLSA and the NYLL, "[n]othing in either statute suggests that the legislators envisioned or

---

[16] $100.00 x 168 weeks worked prior to February 27, 2015 = $16,800; $250.00 x 60 days worked after February 27, 2015 = $15,000.  $16,800 + $15,000 = $31,800, which is statutorily capped at $5,000.

[17] Prior to April 9, 2011, under the NYLL, an employee could recover liquidated damages in the amount of 25% of unpaid wages.  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 503 (S.D.N.Y. 2017).

intended that successful plaintiffs would reap what in effect are three times their damages, rather than double their damages as the statutes explicitly provide." *Castillo v. RV Transport, Inc.*, 15 Civ. 0527 (LGS), 2016 WL 1417848, at *2 (S.D.N.Y. Apr. 11, 2016).  Using this approach, the Court finds that Plaintiff is entitled to recover under the statute that provides the greatest relief, which here is the NYLL, because the statute of limitations is six years (rather than two or three) and also allows for prejudgment interest.[18]  *Id.* at *3; *see also* N.Y. Lab. Law § 198(1-a).

"The applicable rate of interest is 9% per annum, as specified in N.Y. C.P.L.R. §§ 5001 and 5004, and calculated from a reasonable midpoint date during the course of [plaintiff's] employment." *Castillo*, 2016 WL 1417848 at *3 (citation omitted); *see also Padilla*, 643 F. Supp. at 314 (holding that the statutory interest rate in New York is nine percent and when damages are incurred at various times, "interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." (citations omitted)); *Khurana*, 2017 WL 1251102 at *17 ("Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest."); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (calculating interest from plaintiff's midpoint of employment was appropriate).  Under the NYLL a plaintiff may only recover prejudgment interest on actual damages, not liquidated damages. *Gamero*, 272 F. Supp.3d at 515.  Nor is prejudgment interest available for violations of wage statement and/or wage notice provisions. *Id.*

As discussed above, in § III. A, the Court finds that Defendants' violations were willful and thus, Defendants have not made a showing that they acted in good faith to preclude Plaintiff from recovering liquidated damages.  Plaintiff's liquidated damages total $23,097.11 – the

---

[18] "Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA." *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).

amount of Plaintiff's unpaid wages.  As for prejudgment interest, the Court finds that an appropriate midpoint of Plaintiff's employment, which spanned from August 26, 2011 through June 18, 2015, is July 22, 2013.  Thus, Plaintiff is entitled to prejudgment interest of 9% per annum, applied to Plaintiff's actual damages of $23,097.11, not including wage statement and wage notice violations, and not including liquidated damages, for the period: July 22, 2013 – the date of the entry of judgment.

### F.  Post-Judgment Interest

Plaintiff also requests post-judgment interest.  Here, "judgment would be governed by the plain language of 28 U.S.C. § 1961, which applies to 'any money judgment in a civil case recovered in a district court.'"  *Khurana*, 2017 WL 1251102 at *17 (citing 28 U.S.C. § 1961) (holding that although the Court exercised supplemental jurisdiction over plaintiff's state law claims, any judgment awarded still constituted a federal judgment).  Accordingly, Plaintiff is awarded post-judgment interest at the statutorily prescribed federal rate.

Plaintiff further requests an automatic 15% increase regarding any damages not paid within the later of ninety days following issuance of judgment or the expiration of the time to appeal.  *See* N.Y. Lab. Law § 198(4); *Id.* § 663(4); *see also Hernandez v. JRPAC Inc.*, 14 Civ. 4176 (PAE), 2016 WL 3248493, at * 36 (S.D.N.Y. June 9, 2016).  The Judgment embodying this decision shall include a provision that if any amounts awarded hereunder remain unpaid after 90 days from entry of Judgment, an automatic 15% increase in the amount of damages shall be imposed.

### G.  Reasonable Attorneys' Fees and Costs

The FLSA and NYLL both allow for a successful plaintiff to recover "reasonable" attorney's fees.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Having found that Plaintiff

established Defendants' liability for violations of the FLSA and NYLL by a preponderance of the evidence, Plaintiff is entitled to a reasonable award of attorneys' fees and costs.  Plaintiff is directed to file an application including an affidavit or declaration setting forth counsel's experience and qualifications, along with simultaneous billing records and costs related to the instant action on or before October 1, 2022. Defendants are permitted to file any opposition to the fee amount sought on or before November 1, 2022.

## IV.   CONCLUSION

For the reasons stated above, the Clerk of the Court is directed to enter Judgment against Defendants, jointly and severally, in the amount of $56,194.22, consisting of: (1) $23,097.11 in unpaid wages; (2) $23,097.11 in liquidated damages; and (3) $10,000 in statutory damages for violations of the wage and notice statement provisions of the NYLL. Prejudgment interest should be added to the total amount, to be calculated as stated above.  As to the award of attorneys' fees, Plaintiff is directed to file the application for attorneys' fees and costs on or before October 1, 2022, with any opposition due on or before November 1, 2022.  Furthermore, in accordance with Section 198(4) of the NYLL, if any amounts remain unpaid ninety days after the issuance of this judgment, or ninety days after expiration of the time to appeal if no appeal is then pending, whichever is later, the total amount of judgment will automatically increase by fifteen percent. The Clerk of Court is respectfully directed to enter judgment accordingly.

Dated: Central Islip, New York
       September 15, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

23